UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNETTE WAITE,

       Plaintiff,

v.                                    CASE NO:  8:09-cv-02336-T-33AEP

FINANCIAL RECOVERY SERVICES, INC.,

       Defendant.
_____/


**ORDER**

    This cause is before the Court pursuant to Defendant Financial Recovery Services, Inc.'s Motion for Summary Judgment (Doc. # 22), filed on August 4, 2010.  Plaintiff Annette Waite filed a Response in Opposition to Defendant's Motion for Summary Judgment on August 18, 2010.  (Doc. # 23).  For the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

**I.  Background**

    This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Doc. # 1 at 1).  Section 1692d of the FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Conduct that

constitutes harassment, oppression or abuse under § 1692d includes, but is not limited to, "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."   15 U.S.C. § 1692d(5).

Plaintiff's Complaint alleges that Defendant violated § 1692d and § 1692d(5) of the FDCPA.[1]   (Doc. # 1 at 1). Plaintiff asserts that she is a consumer as that term is defined by 15 U.S.C. § 1692a(3) of the FDCPA and that Plaintiff allegedly owes a debt to Defendant, a debt collector as that term is defined by 15 U.S.C. § 1692a(6).  Id. at 2-3. Plaintiff alleges that Defendant sought to collect a consumer debt from Plaintiff and Defendant violated § 1692d of the FDCPA by engaging in conduct that the natural consequence of which was to harass, oppress, and abuse Plaintiff in connection with the collection of the alleged debt.  Id. Plaintiff contends that Defendant violated § 1692d(5) of the FDCPA by causing a telephone to ring repeatedly and

---

[1] Plaintiff's Complaint originally included § 1692c(a)(1) and § 1692g(1-5) claims.  (Doc. # 1 at 2-3).  However, Plaintiff withdrew these claims in her Response in Opposition to Defendant's Motion for Summary Judgment.  (Doc. # 23 at 15).  Therefore, the only remaining claims before the Court are Plaintiff's § 1692d and § 1692d(5) claims.

continuously with the intent to annoy, abuse, and harass Plaintiff. Id. at 3. Plaintiff's Complaint contains a single factual allegation supporting her § 1692d and § 1692d(5) claims: "Defendant constantly and continuously places collection calls to Plaintiff seeking and demanding payment for an alleged debt . . . ." Id. at 2.

In her Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff further asserts that between February 6, 2009 and November 19, 2009, Defendant placed 132 collection calls to Plaintiff.[2] (Doc. # 23 at 1, 9 n.1).

---

[2] Plaintiff argues that Defendant improperly disputes whether Plaintiff's Complaint complies with Federal Rule of Civil Procedure 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." (Doc. # 23 at 5). Plaintiff asserts that Defendant is not entitled to challenge the sufficiency of Plaintiff's Complaint since Defendant previously filed an Answer to Plaintiff's Complaint before filing the instant Motion for Summary Judgment. See Fed. R. Civ. P. 12(b)(6).

Although Defendant alludes to dismissal pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court notes that Defendant's motion is explicitly one for summary judgment, and Defendant merely calls the Court's attention to the fact that "notwithstanding that [Defendant] brought this motion as one for summary judgment, it is noteworthy that even under the more exacting standard of review on a Rule 12 motion to dismiss, Plaintiff's Complaint is deficient . . . ." (Doc. # 22 at 9-10).

The Court notes that, indeed, Plaintiff's Complaint, which recites a single factual allegation relating to her § 1692d and § 1692d(5) claims that consists of a legal conclusion echoing statutory elements, as noted above, likely does not pass muster under Federal Rule of Civil Procedure

Defendant asserts that the record before the Court presents no genuine issue of material fact as to Defendant's intent to annoy, abuse, or harass Plaintiff in violation of the FDCPA and moves for summary judgment on Plaintiff's § 1692d and §1692d(5) claims.  (Doc. # 22 at 1).  Plaintiff argues that Defendant has failed to meet its burden of proving an absence of material fact because Defendant's call volume constitutes a triable question of fact for a jury and that Defendant is therefore not entitled to judgment as a matter of law.  (Doc. # 23 at 15).

---

8(a)(2) analysis.  See Tucker v. Malcolm S. Gerald and Assoc., Inc., No. 3:09-cv-1183-J-12JRK, 2010 WL 1223912, at *2 (M.D. Fla. Mar. 24, 2010) (finding that plaintiff's complaint alleging violations of various provisions of the FDCPA failed to comply with Federal Rule of Civil Procedure 8(a)(2) where it largely consisted of legal conclusions and recitations of statutory elements with no mention of the number, frequency or pattern of calls).

However, Defendant's point is moot in light of the factual allegations asserted in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.  (Doc. # 23).  On a motion for summary judgment the Court considers "the pleadings, the discovery and disclosure materials on file, and any affidavits show[ing] that there is no genuine issue as to any material fact[,]" Fed. R. Civ. P. 56(c), and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment asserts that Defendant placed 132 collection calls over a 9-month period.  (Doc. # 23 at 1, 9 n.1).  Such facts concerning the number, frequency and timeframe of the communications are sufficient to state a claim upon which relief can be granted in compliance with Federal Rule of Civil Procedure 8(a)(2).

## II.   <u>Standard of Review</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its

5

burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

6

III. **Analysis**

In determining liability under § 1692d(5), "[c]ourts have held that '[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.'" Brandt v. I.C. Sys., Inc., No. 8:09-cv-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010) (quoting Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 505 (D. Md. 2004); Joseph v. J.J. Mac Intyre Cos., LLC., 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002)). Under this section, "[a]ctionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages." Majeski v. I.C. Sys., Inc., No. 08 C 5583, 2010 WL 145861, at *3 (N.D. Ill. Jan. 8, 2010).

Further, the Eleventh Circuit has held that "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985).

Plaintiff's § 1692d and § 1692d(5) claims rest squarely on the fact that between February 6, 2009 and November 19, 2009, Defendant placed 132 collection calls to Plaintiff. (Doc. # 23 at 1, 9 n.1). Specifically, Plaintiff asserts that Defendant placed 29 calls in February, 27 calls in March, 13

7

calls in April, 3 calls in May, 7 calls in June, 3 calls in July, 17 calls in August, 20 calls in September, 10 calls in October, and 3 calls in November.  <u>Id.</u> at 1-2.

Plaintiff argues that "whether [132] collection calls to Plaintiff in a [9-month] period is excessive is a question of fact for a jury."  <u>Id.</u> at 11.  Plaintiff further asserts that "[t]here is case law throughout the nation recognizing that whether the nature and frequency of debt collection calls constitute harassment is a factual issue for the jury."  <u>Id.</u>

Plaintiff is correct in pointing out that "[o]rdinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury."  <u>Jeter</u>, 760 F.2d 1168 at 1179.  There is some disagreement among district courts as to the specific volume and pattern of calls that will allow a plaintiff to raise a triable issue of fact regarding the defendant's intent to annoy or harass.  <u>See</u> <u>Arteaga v. Asset Acceptance, LLC</u>, No. CV-F-09-1860 LJO GSA, 2010 WL 3310259, at *5 (C.D. Cal. Aug. 23, 2010); <u>Krapf v. Nationwide Credit Inc.</u>, No. SACV 09-00711 JVS (MLGx), 2010 WL 2025323, at *3-4 (C.D. Cal. May 21, 2010).  However, courts may resolve the question as a matter of law in appropriate cases.  <u>Jeter</u>, 760 F.2d 1168 at 1179-80; <u>see</u> <u>Arteaga</u>, 2010 WL 3310259, at *5 ("Although there is no bright-line rule, certain conduct generally is found to either

8

constitute harassment, or raise an issue of fact as to whether the conduct constitutes harassment, while other conduct fails to establish harassment as a matter of law.").

Plaintiff asserts that Defendant's "calls were almost daily." (Doc. # 23 at 3). The Court notes that the volume of calls initially received by Plaintiff, 29 calls in February and 27 calls in March, do appear somewhat high. However, beginning in April, the number of calls significantly taper off, such that the call volume from April through November do not appear notably high and certainly cannot be characterized as occurring on a "daily" basis. Nonetheless, courts have found that even "daily" calls, unaccompanied by other egregious conduct, such as calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family, or friends, calling at odd hours, or calling after being asked to stop, is insufficient to raise a triable issue of fact for the jury. See Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) ("[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages."); Arteaga, 2010 WL 3310259, at *16

(noting that "daily" or "nearly daily" phone calls alone fail to raise an issue of fact for a jury to determine whether the conduct violates § 1692d and § 1692d(5)); <u>Tucker v. CBE Grp., Inc.</u>, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (noting that while defendant's calling plaintiff 57 times over a 20-day period appeared "somewhat high,"[3] defendant's conduct still failed to constitute a violation of § 1692(d)(5) as a matter of law where defendant left a total of six messages, made no more than seven calls in a single day, did not call back the same day after leaving a message, and did not repeatedly make calls after it was asked to cease);[4] <u>Katz v. Capital One</u>, No.

---

[3] Although the trial court did not indicate the period over which Defendant placed the 57 calls, court filings indicate that the calls occurred over a 20-day period between January 9, 2009 and January 29, 2009. (Pl.'s Revised Resp. in Opp'n to Def.'s Mot. for Summ. J. at 2, <u>Tucker v. CBE Grp.</u>, Inc., No. 3:09-cv-134-J-25 MCR (M.D. Fla. May 5, 2010), ECF Doc. No. 25).

[4] Plaintiff argues that any reliance on <u>Tucker</u> is misplaced because the <u>Tucker</u> court, in granting defendant's motion for summary judgment as to plaintiff's § 1692d and § 1692d(5) claims, addressed an FDCPA action in which the plaintiff was a non-debtor third party whose adult daughter allegedly owed the debt sought by defendant. (Doc. # 23 at 10). The Court rejects this argument. While the <u>Tucker</u> court indeed noted that defendant called plaintiff in an attempt to collect a debt from plaintiff's adult daughter, the court squarely rested its determination that "[defendant] placed each of its telephone calls with an intent to reach [plaintiff's adult daughter] rather than an intent to harass [p]laintiff" on the absence of evidence that defendant engaged in "oppressive conduct" constituting a violation of § 1692d

10

1:09CV1059(LMB/TRJ), 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010) (finding that two calls placed within a single day were insufficient to raise a triable issue of fact and did not constitute harassment as a matter of law if unsupported by any indicia of an unacceptable pattern of calls, such as being placed back-to-back, at inconvenient times, or after plaintiff had asked defendant to stop calling, or immediately after plaintiff hung up).

After carefully examining the evidence, the Court finds the record to be lacking of any indicia of the type of egregious conduct raising issues of triable fact when coupled with a high call volume.[5] Plaintiff contends that "Defendant admitted that it called Plaintiff more than one time in [24] hours[,]" that the calls were "even several times in a single day[,]" and that "Defendant would call for a period of time, then the calls would stop for a period of time, then the calls would start up again." (Doc. # 23 at 2-3, 7).

However, the call log shows that Defendant placed no more than 4 calls to Plaintiff within a single day, and even this

---

and § 1692d(5).  <u>Tucker</u>, 710 F. Supp. 2d at 1305.

[5] The Court notes that only the 29 calls received in February and 27 calls received in March appear excessive.  The call volume during the subsequent months is generally much lower.

11

conduct occurred only three times spanning a 9-month period. (See Doc. # 22-1 at 5-8).[6]   The Court notes that even these sparse instances do not exhibit the vexing qualities in which courts have typically found an intent to "annoy, abuse, or harass" in violation of § 1692d(5).   See Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443, 1452-53 (D. Nev. 1994) (finding violation of § 1692d(5) for six telephone calls in 24 minutes where numerous phone calls "significantly disrupted [plaintiff's] place of work[,]" phone calls required the attention of either plaintiff or plaintiff's co-worker, and plaintiff set forth evidence that the conduct of "[defendant] may have been abusive."); United States v. Central Adjustment Bureau, Inc., 667 F. Supp. 370, 376 (N.D. Tex. 1986), aff'd as modified on other grounds, 823 F.2d 880 (5th Cir. 1987) (finding a violation of § 1692d(5) where debt collectors placed up to seven calls a day or 15 calls a week to debtors or their family members, at both home and work, including instances in which debt collectors called back immediately after a debtor abruptly hung up, and even after debt collectors were told to stop either

_____

   [6] This is the same call log that Plaintiff explicitly relies on to assert that Defendant placed 132 collection calls to Plaintiff, which is attached to Defendant's Motion for Summary Judgment as Exhibit A.  (See Doc. #22-1 at 5-8).  The Court notes that Plaintiff provides no supporting call records of her own.

orally or in writing); <u>Bingham v. Collection Bureau, Inc.</u>, 505 F. Supp. 864, 873 (D.N.D. 1981) (finding violation of § 1692d(5) where plaintiff terminated call and collection agency immediately called back).  The call log reflects the most egregious instance to include an August 19, 2009 conversation in which an individual answered Defendant's second call, placed several minutes after the first unanswered call, and is described as "very upset."  (<u>See</u> Doc. # 22-1 at 7).  Notably, Defendant did not call Plaintiff back after this conversation. <u>Id.</u>

Moreover, the call log shows that in the majority of instances, Defendant attempted to contact Plaintiff once per day, if at all, at Plaintiff's home telephone number.  <u>Id.</u>  The call log also shows that Defendant did not call Plaintiff at inconvenient times, typically attempting communication with Plaintiff between 9:00 am and 7:00 pm EST,[7] left no more than six messages, and never called Plaintiff back on the same day after leaving a message.  <u>Id.</u>  The call log also reveals only a handful of instances in which Defendant actually engaged

_____

[7] The call log lists the earliest call as occurring at 7:30 am CST, and thus 8:30 EST, and the latest call as occurring at 7:38 CST, and thus 8:38 pm EST.  (<u>See</u> Doc. # 22-1 at 5-8).  These are atypical instances, with the majority of calls occurring between 9:00 am and 7:00 pm EST.

Plaintiff in a live conversation, as the majority of calls appear to have gone unanswered.  Id.  Such facts, when coupled with Plaintiff's lack of any indication that Plaintiff ever confirmed or disputed the debt, or any allegations that Plaintiff ever asked Defendant to cease contact,[8] fail to raise a triable issue of fact regarding Defendant's intent to "annoy,

---

[8] Plaintiff argues that inquiring into whether Plaintiff ever confirmed or disputed the validity of the debt or asked Defendant to cease communication is inappropriate because it references a burden not imposed on a consumer or debtor under the FDCPA.  (Doc. # 23 at 14-15).  Defendant asserts that there is no affirmative defense in the FDCPA that shields debt collectors from liability if the recipient of unwanted or excessive collection calls fails to ask the collector to stop calling.  Id.  Indeed, whether a valid debt exists does not matter.  See Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists.").  However, the Court's interest in this point reflects a desire to clarify the issue of whether Defendant intended to "annoy, abuse, or harass" in violation of § 1692d(5) or whether Defendant, believing Plaintiff's debt to be valid, merely endeavored to collect that debt, and encountered difficulty in establishing contact with Plaintiff.  A high volume of unanswered calls without any prior records of substantive conversations between Plaintiff and Defendant tends to suggest a difficulty in reaching Plaintiff rather than an intent to harass.  In contrast, calling after being asked to stop is far more indicative of an intent to abuse.  See Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008) (noting that intent may be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called and had repeatedly refused to pay the alleged debt). Moreover, many other courts have considered this factor in their 1692d(5) analysis.  See, e.g., Tucker, 710 F. Supp. 2d at 1305; Katz, 2010 WL 1039850, at *3; Central Adjustment Bureau, Inc., 667 F. Supp. at 376.

14

abuse, or harass." Rather, they indicate that Defendant, believing Plaintiff's debt to be valid, endeavored to collect that debt, and encountered difficulty in establishing contact with Plaintiff. See Saltzman, 2009 WL 3190359, at *6-7 & n.4 (granting summary judgment for the defendant despite 20 to 50 unsuccessful calls and 10 to 20 successful calls over roughly a month to plaintiff's residence and holding that, without more, the calling pattern did not constitute "evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse" and that the volume of calls and the "significant disparity between the number of telephone calls placed by Defendant and the number of actual successful conversations with Plaintiff . . . suggests a 'difficulty of reaching Plaintiff, rather than an intent to harass.'") (quoting Millsap v. CCB Credit Servs., Inc., No. 07-11915, slip op. at 17 (E.D. Mich. Sept. 30, 2008).

Nothing in the record indicates that the phone calls were intended to be annoying, abusive, or harassing. There are no allegations of abusive telephone conversations or written correspondence. Although the number of calls in February and March does appear somewhat high, they are unaccompanied by any other egregious conduct to evince an intent to harass, annoy, or

15

abuse.[9]  Defendant argues that this is not the type of abusive conduct that the FDCPA was designed to remedy, and the Court agrees.  See Gorman v. Wolpoff & Abramson, LLP, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), rev'd on other grounds, 584 F.3d 1147 (9th Cir. 2009) (a plaintiff must show that the repeated calls were made with the intent to annoy, abuse, or harass, as "Congress did not intend the FDCPA to completely bar any debt collection calls."); Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 398 (6th Cir. 1998) ("Congress intended the Act to eliminate unfair debt-collection practices, such as late-night telephone calls, false representations, and embarrassing communications."); Graziano v. Harrison, 763 F. Supp. 1269, 1275

---

[9] Plaintiff also contends that "Defendant . . . called Plaintiff and hung up without leaving a voicemail message." (Doc. # 23 at 2).  The Court notes that such an allegation typically relates to a § 1692d(6) claim, which prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity."  15 U.S.C. § 1692d(6).  Although Plaintiff does not assert a § 1692d(6) claim, other courts have noted that "Section 1692d(6) does not, when read in isolation, specify whether a debt collector who calls a consumer must leave a message when the consumer does not answer the call. When this provision, however, is read in conjunction with the entirety of § 1692d, it is clear that not leaving a message is not the type of harassing, oppressive, or abusive conduct that violates the statute." Udell v. Kansas Counselors, Inc., 313 F. Supp. 2d 1135, 1143 (D. Kan. 2004) (holding that the placement of four automated telephone calls to consumers over the course of seven days without leaving a message did not, as a matter of law, constitute harassment under § 1692d(6)).

(D.N.J. 1990), aff'd in part and rev'd in part on other grounds, 950 F.2d 107 (3rd Cir. 1991) (explaining that the goal of the FDCPA is "to protect consumers from unfair, deceptive and harassing collection practices while leaving collectors free to employ efficient, reasonable and ethical practices in pursuit of their profession.").

Plaintiff cites Krapf, Bassett v. I.C. Sys., Inc., 715 F. Supp. 2d 803 (N.D. Ill. 2010), Sanchez v. Client Servs., Inc., 520 F. Supp. 2d 1149 (N.D. Cal. 2007), and Brown v. Hosto & Buchan, PLLC, No. 10-2497, 2010 WL 4352932 (W.D. Tenn. Nov. 2, 2010) to support her contention that the case at bar raises a triable question of fact for the jury. However, the cases Plaintiff cites to are factually distinguishable from the instant case.

In Krapf, the court denied defendant's motion for summary judgment, finding that the plaintiff had presented sufficient evidence to raise a triable issue of fact as to defendant's repeated phone calls where defendant allegedly called the plaintiff's cell phone an average of six times per day for the month of May and part of June and, at times, with only 3 minutes between calls. 2010 WL 2025323, at *4. However, the sheer volume and frequency of calls received by the Krapf plaintiff places Krapf beyond the scope of the case at bar. Plaintiff

alleges 132 collection calls over a 9-month period, whereas the Krapf court noted that plaintiff's call volume amounted to "a total of over 180 calls for the month of May alone."  Id.

In Bassett, the court denied defendant's motion for summary judgment as to plaintiff's § 1692d(5) claim where defendant had placed 31 calls to plaintiff over a 12-day period.  715 F. Supp. 2d at 810.  The facts surrounding the Bassett plaintiff, however, are far more egregious and demonstrative of abusive conduct than the instant case.  In contrast to Plaintiff, the Bassett plaintiff engaged in significant communications with defendant, explained to defendant that he was unable to make payments on his debt, and specifically contacted defendant after multiple attempts to collect the debt to explain that his financial situation had not improved, and that he suffered from bipolar and  post-traumatic stress disorders, which became agitated by episodes in which he felt abused or harassed, including his contact with defendant.  Id. at 807, 811.  Calls placed after the receipt of such information can only be indicative of an intent to harass.  In the instant case, Plaintiff presents no evidence that she engaged in any meaningful communication with Defendant, ever asked Defendant to cease calling or indicated to Defendant an inability to pay the alleged debt, all of which are factors that suggest an intent by

18

Defendant to establish contact with Plaintiff rather than an intent to harass.

In _Sanchez_, the court granted summary judgment to an FDCPA plaintiff where defendant attempted to reach plaintiff at work approximately 54 times within a 6-month period and left approximately 25 messages on the work answering machine.  520 F. Supp. 2d at 1152.  Unlike the case at bar, a number of those calls were placed on the same day within a brief scope of time and at least 6 telephone calls were placed within a single day. _Id._ at 1161.  On at least two occasions, defendant reached two co-workers of plaintiff.  _Id._ at 1153.  Although plaintiff's husband twice requested that defendant refrain from making further telephone calls to plaintiff's workplace, the calls to plaintiff's workplace, as well as to her family and neighbors, continued, and plaintiff allegedly suffered personal and marital discord requiring her to consult a physician as a result of defendant's conduct.  _Id._ at 1153-54.  In contrast to the _Sanchez_ plaintiff, Plaintiff received calls only at her home telephone number and experienced no such abuse in her work environment.

Finally, the facts of _Brown_ are also distinguishable from the case at bar.  The _Brown_ defendant allegedly placed 17 calls during a 1-month period in an effort to collect a debt from

19

plaintiff.   2010 WL 4352932, at *3.   While the call volume in Brown is comparable to the call volume in certain months in the case at bar, the Brown court considered a 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted rather than a motion for summary judgment.   Id. at 1. Further, after learning that plaintiff was being represented by counsel, the Brown defendant communicated directly with the debtor without permission from her attorney.   Id.   As the Court noted above, such details concerning the number, frequency and timeframe of calls are sufficient to survive a motion to dismiss, while a different standard of review governs a motion for summary judgment.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there are no genuine issues of material fact as to whether Defendant's repeated phone calls to Plaintiff demonstrate an intent to "annoy, abuse, or harass" in violation of § 1692d(5).   Accordingly, summary judgment is granted as to Defendant's § 1692d and § 1692d(5) claim.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant's Motion for Summary Judgment (Doc. # 22) is

   **GRANTED**.

(2)   The Clerk is directed to enter judgment in favor of

20

Defendant and close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 16th day of December, 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record